UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GLORIA BAZAN,

    Plaintiff,

v.

NANCY A. BERRYHILL,

    Defendant.

Case No. 18-cv-01224-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 20, 25

Plaintiff Gloria Bazan seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff applied for Title II and Title XVI benefits on August 26, 2014. (Administrative Record ("AR") 688, 695.) Plaintiff asserted disability beginning December 28, 2013. (AR 688, 695.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 630-34, 637-42.) On July 29, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 643.) The ALJ held a hearing on September 1, 2016. (AR 537-72.)

The ALJ considered a number of medical opinions in rendering a decision, including the opinion of treating psychiatrist Lisa Large, M.D. Dr. Large treated Plaintiff starting in May 2016.

(AR 1594-1600.) On May 13, 2016, Plaintiff stated she had been depressed since she stopped working, and ranked her depression at 10/10 because her pain was horrible. (AR 1594.) Dr. Large described Plaintiff as pleasant and cooperative, with good eye contact, moderate speech tone and flow, and goal-directed. (AR 1595.) Plaintiff's affect was depressed and tearful, and she had impaired attention and short-term memory. (AR 1595.) Plaintiff identified 0/3 objects in 3 minutes, and 2/3 with prompts. (AR 1595.)

On May 20, 2016, Dr. Large again described Plaintiff as pleasant and cooperating, with good eye contact, moderate speech tone and flow, and goal-directed. (AR 1591.) Her mood and affect were depressed. (AR 1591.) Dr. Large found Plaintiff met the criteria for major depression. (AR 1587, 1592.) On July 1, 2016, Dr. Large likewise described Plaintiff as pleasant and cooperating, with good eye contact, moderate speech tone and flow, and goal-directed, but with depressed mood and affect. (AR 1588.)

On July 15, 2016, Plaintiff stated she had not noticed a change in her depression, but that she had been feeling more anxious and nervous since increasing her Venlafaxine dosage. (AR 1584.)

On July 28, 2016, Dr. Large found that Plaintiff was "clearly confused," and that she was having difficulty with the directions given to her at her last visit. (AR 1581.) Plaintiff had decreased her Duloxetine dosage without increasing her Venlafaxine dosage, resulting in likely withdrawal from Duloxetine.

On August 5, 2016, Plaintiff stated she was feeling some nervousness. (AR 1578.) She ranked her depression at 5/10 and stated that she was sleeping a little better, but stated her anxiety was worse and that she was still having difficulty following directions. (AR 1578.) Dr. Large described Plaintiff's mood as "I don't feel happy" and her affect as depressed. (AR 1578.)

On August 12, 2016, Plaintiff ranked her depression at 10/10. (AR 1575.) Dr. Large described Plaintiff's mood as "Not good" and her affect as depressed and tearful. (AR 1575.)

On August 19, 2016, Plaintiff described her mood as "not happy," and ranked her depression at 5/10. (AR 1571.) Dr. Large described Plaintiff as looking more relaxed and less depressed, but that Plaintiff did not recognize it. Dr. Large found Plaintiff's mood was "not

2

happy" but that her affect was less depressed, and there was no tearfulness. (AR 1571.)

On August 26, 2016, Plaintiff continued to describe her mood as "not happy," and ranked her depression at 10/10. (AR 1567.) Dr. Large found Plaintiff continued to look more relaxed and less depressed, although Plaintiff continued to complain about feeling more anxious on the Venlafaxine. (AR 1567.) Dr. Large found Plaintiff's mood was "not happy" but that her affect was still less depressed, with no tearfulness. (AR 1567.) Dr. Large also noted that Plaintiff was able to identify 2/3 objects at 3 minutes, and 3/3 with prompts. (AR 1567.)

That same day, Dr. Large filled out a Mental Residual Functional Capacity Questionnaire. (AR 1562-63.) Dr. Large found Plaintiff was limited but could satisfactorily get along with co-workers or peers, respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions. (AR 1563.) Plaintiff was seriously limited but not precluded in her ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors. (AR 1562-63.) Plaintiff was unable to meet competitive standards as to her ability to maintain attention for two-hour segments, maintain regular attendance, sustain an ordinary routine without special supervision, make simple work-related decisions, and deal with normal work stress. (AR 1562-63.) Plaintiff had no useful ability to function as to working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1562.) Dr. Large also found Plaintiff was limited but could satisfactorily understand and remember detailed instructions, and carry out detailed instructions. (AR 1563.) She was unable to meet competitive standards in setting realistic goals or dealing with the stress of semiskilled and skilled work. (AR 1563.) Finally, Dr. Large found Plaintiff was limited but could satisfactorily interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (AR 1563.) Plaintiff was seriously limited but not precluded in her ability to travel in unfamiliar places, and unable to meet competitive standards as to using public

3

transportation. (AR 1563.)

Dr. Large also found that Plaintiff's impairments would likely cause her to miss more than four days per month, and that Plaintiff would need to take many unscheduled breaks during an eight-hour work day. (AR 1564.) Dr. Large did not believe Plaintiff was a malingerer. She explained that Plaintiff had "3 sources of severe chronic pain that have not responded to treatment which exacerbate her chronic depression which has not responded adequately to treatment." (AR 1564.) Plaintiff also had poor concentration and memory. Dr. Large opined that Plaintiff would not be able to perform work on a full-time basis, again explaining that Plaintiff's "[d]epression has not responded to multiple medications and [Plaintiff] has 3 sources of pain which exacerbate depression." (AR 1564.)

The ALJ also considered the May 1, 2015 opinion of examining doctor Caroline Salvador-Moses, Psy.D. (AR 1136-39.) Plaintiff reported suffering from depressed mood, feelings of helplessness, loss of interest in usual activities, sleep problems, anxiety, worry, and panic attacks. (AR 1137.) Plaintiff stated she could handle personal hygiene and self-care, but that her sons helped her clean and perform household chores. (AR 1137.) Dr. Salvador-Moses observed Plaintiff as having adequate grooming and hygiene. (AR 1137.) Plaintiff was adequately cooperative in responding to questions and made adequate eye contact, although her posture evidenced psychomotor agitation. (AR 1137.) Her stream of mental activity was linear but repetitive, and her thoughts were preoccupied with worries and negative content. (AR 1137.) Plaintiff had adequate attention and concentration, as well as adequate memory for past events, but she demonstrated limited understanding of her mental health symptoms and need for treatment, and limited ability to make realistic plans and anticipate the consequences of her actions. (AR 1137.) Plaintiff's abstract reasoning was varied, as she was able to make comparisons between animals but unable to explain the meaning of a proverb. (AR 1137.) Her math skills and short-term memory were substandard. (AR 1138.)

Based on her examination, Dr. Salvador-Moses opined that Plaintiff presented symptoms of depression and anxiety, and that her symptoms would "cause clinically significant impairment in all areas of functioning." (AR 1138.) Dr. Salvador-Moses found Plaintiff would be moderately

4

impaired in her ability to understand and remember simple instructions, understand and remember complex instructions, interact appropriately with co-workers, and concentrate. (AR 1138-39.) Plaintiff was severely impaired in her ability to carry out simple instructions, make judgments on simple work-related decisions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with supervisors, respond appropriately to usual work situations, maintain pace, and persistence. (AR 1138-39.) Dr. Salvador also opined Plaintiff would need assistance managing her funds. (AR 1139.)

At the hearing, Plaintiff testified that she stopped working due to pain. (AR 543.) Plaintiff stated she had suffered back pain for approximately twenty years, dating back to a car accident. (AR 544.) Her treatment included seeing a doctor at a pain clinic, taking Lyrica for nerve pain, and seeing a psychiatrist for depression. (AR 545.) Plaintiff also testified that she had received steroid injections in 2004 and 2009. (AR 549.) Plaintiff stated she lived in a two-story townhouse with her fourteen-year old son, and would use the stairs. (AR 553, 557.) She did not do laundry and vacuuming. (AR 554.) Instead, her son did chores, and her older son came around once or twice a week to help. (AR 554.) Her younger son helped her with making meals. (AR 554.) Plaintiff stated she had a driver's license, although she did not drive and used a cab service to get to doctor's appointments. (AR 554.) Plaintiff testified that her older son received some disability benefits after a 2015 car accident. (AR 555.) In response to the ALJ's questions about how Plaintiff monitored her younger son's progress in school, Plaintiff stated that she did not really correspond with his teachers by e-mail or through a website. (AR 555-56.) Instead, a counselor helped drive her to school so she could meet in person with his teachers. (AR 556.) Plaintiff paid the gas bill only; her older son paid her other bills. (AR 563.)

Vocational Expert ("VE") Thomas Linville also testified at the hearing. (AR 563.) The ALJ presented a hypothetical of an individual with an exertional level of sedentary work, with occasional ramps and stairs and no use of ladders, ropes, and scaffolds. (AR 565-66.) The individual would also be able to occasionally crouch, kneel, crawl, and stoop. (AR 565.) The individual would be limited to simple, repetitive tasks, with occasional interactions with co-workers and the public. (AR 565.) VE Linville stated that such an individual could work as a

5

hand packager (8,000 jobs), addresser (8,000 jobs), and document preparer (15,000 jobs). (AR 566-67.)

Following the hearing, the ALJ denied Plaintiff's application on November 2, 2016. (AR 20-33.) A request for review of the ALJ's decision was filed with the Appeals Council on November 25, 2016. (AR 686-87.) Plaintiff submitted additional evidence, including an epidural steroid injection on September 12, 2016. (AR 295.) Plaintiff also submitted an examination of her hands from Paige Fox, M.D. and Ph.D. (AR 228.) The exam showed some resistance in extending Plaintiff's right index, middle, ring, and little finger, and some resistance in extending both wrists. (AR 228.) Dr. Fox further found that pain limited the functional use of both her hands and the ability to perform basic activities of daily living, and that her grip in both hands was very weak. (AR 229.) Dr. Fox recommended continued hand therapy, and found that Plaintiff's likely treatment duration was five to six weeks with good rehabilitation potential. (AR 228-29.)

Finally, Plaintiff submitted a letter from Dr. Large. (AR 8-9.) The letter asked Dr. Large to explain whether her progress notes from August to October 2016, which indicated that Plaintiff appeared more relaxed and less depressed, meant that Plaintiff could sustain full time work even at an unskilled level. (AR 9.) Dr. Large responded that Plaintiff "could not tolerate the dose of antidepressant[s] she was on at that time due to adverse side effects." (AR 9.) Further, "her physical pain/limitations appear too severe for her to be able to sit or stand for a sustained period of time to maintain a regular work schedule. Her depression is currently severe and very poorly controlled." (AR 9.)

The Appeals Council denied Plaintiff's request for review on December 21, 2017. (AR 1.) With respect to the additional evidence, the Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (AR 2.)

On February 25, 2018, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On December 10, 2018, Plaintiff filed her motion for summary judgment. (Plf.'s Mot., Dkt. No. 20.) On January 31, 2019, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 25.) On March 5, 2019, Plaintiff filed her reply.

(Plf.'s Reply, Dkt. No. 28.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal

7

standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On November 2, 2016, the ALJ issued an unfavorable decision. (AR 20-33.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 28, 2013, the alleged onset date. (AR 22.)

At step two, the ALJ found Plaintiff had the following severe impairments: fibromyalgia, depression, anxiety, post-thyroidectomy, disc bulges in the cervical and lumbar spine, and diabetes. (AR 22.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 23.) In so finding, the ALJ noted that Plaintiff suffered from depressed mood, feelings of helplessness, loss of interest in usual activities, sleep problems, and anxiety, but that the severity of her mental impairments did not equal a listed impairment. (AR 24.) The ALJ found Plaintiff had mild restriction in daily living, as she maintained a driver's license, "sometimes" attended parent-teacher conferences, paid utility bills, and handled her personal hygiene and self-care. (AR 24.) The ALJ also found Plaintiff had moderate difficulties in social functioning, as she reported that she did not spend time with or do anything with others, and did not go to places on a regular basis. The ALJ observed that Plaintiff did live with one of her sons, and that her older son completed a third party report stating that Plaintiff went to the park, took walks, and went to church on a regular basis. Plaintiff also went to the grocery store. (AR 24.) Finally, the ALJ found that Plaintiff had moderate difficulties with concentration, persistence, or pace, as she reported having difficulty concentrating, remembering information, and word-finding. (AR 25.) The ALJ further noted that Plaintiff underwent a mental health examination that showed adequate attention and

8

concentration, but limited ability to make realistic plans and anticipate consequences of actions. (AR 25.)

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work, except that she could no more than occasionally crouch, kneel, stoop, and crawl, and could no more than frequently perform fingering and manipulative tasks. (AR 25.) Plaintiff was also limited to simple, repetitive tasks and no more than occasional interaction with co-workers and the public. (AR 25.)

The ALJ summarized Plaintiff's allegations, and concluded that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence . . . ." (AR 26-27.) The ALJ specifically noted that Plaintiff "had maintained a driver's license and has been able to maintain a household," and "ascends and descends stairs a few times per day, which reveals a mobility to perform at least sedentary work." (AR 27.) The ALJ also found that Plaintiff "avoided giving a direct answer regarding who prepares meals; however, in a function report completed by the claimant, she prepares simple meals on a daily basis." (AR 27.) The ALJ acknowledged that Plaintiff received frequent support from an adult child, and noted that both her children received disability benefits "yet both perform substantially all of the tasks associated with household upkeep." (AR 27.)

The ALJ then considered the medical evidence. Specific to Plaintiff's fibromyalgia, the ALJ explained that "there are many times that the allegations appear to be unsupported by objective medical evidence alone." (AR 28.) Thus, "[t]o properly evaluate the claimant's symptoms, the undersigned must, in addition to reviewing the objective medical evidence, must also consider the claimant's statements reflected in the forms she filled out, the reports made to her medical providers, and her hearing testimony." (AR 28.) With respect to Plaintiff's testimony, the ALJ found that Plaintiff had "avoided specific discussion of her condition and capabilities and instead relied on general assertion of pain," and that Plaintiff "avoided talking about any task that would reveal the extent of her capabilities." (AR 28.) The ALJ cited, as an

example of her avoidance, Plaintiff's testimony regarding how she monitored her school age son's progress in school. "She was asked whether she checks with the school via email or attended parent-teacher meetings. After several questions, she stated that she 'sometimes' monitors her son's progress but did not provide anything more specific." (AR 28.) The ALJ found, however, that "the symptoms that accompany fibromyalgia can reasonably cause a decrease in physical functional capacity, which is captured by the above [RFC] of sedentary work." (AR 28.)

As to the mental impairments, the ALJ noted that Plaintiff did not receive treatment until 2016, and that her symptoms improved. (AR 29.) The ALJ specifically pointed to Dr. Large's report that Plaintiff looked more relaxed and less depressed. Further, although Plaintiff "was encouraged to seek psych help, seek physical therapy, exercise and change her diet, . . . her compliance with these suggestions [wa]s poor." (AR 29.)

Next, the ALJ examined the medical opinions. The ALJ rejected Dr. Large's opinion that Plaintiff's ability to do unskilled work ranged between limited and no useful ability to function, finding that "the limitations asserted are not supported by any narrative or reference to the medical record." (AR 29.) Instead, the ALJ found that Dr. Large's treatment notes showed that treatment of a modest duration had improved Plaintiff's condition, and that Plaintiff's condition was not as limited as asserted. (AR 29.)

The ALJ gave partial weight to Dr. Salvador-Moses's opinion "because it does reflect that the claimant has mental limitations; however, the evaluation conducted by Dr. Salvador-Moses and the overall medical evidence of record does not support such a restrictive functional limitation." (AR 30.)

The ALJ found that Plaintiff was unable to perform her past relevant work as a caregiver home health aide, as that work required a medium exertional level. (AR 31.)

At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 31.) Citing to the VE's testimony, the ALJ found Plaintiff could work as an addresser (8,000 jobs), document preparer (15,000 jobs), and hand packager (8,000 jobs). (AR 32.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 32.)

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on five grounds. First, Plaintiff argues that the Appeals Council erred when it failed to consider the new evidence. (Plf.'s Mot. at 10.) Second, Plaintiff contends that the ALJ erred at step five in finding that there were jobs that existed in substantial numbers that Plaintiff could perform. (*Id.* at 11.) Third, Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of Dr. Large and Dr. Salvador-Moses. (*Id.* at 14.) Fourth, Plaintiff argues that the ALJ misunderstood the nature of fibromyalgia and failed to consider the combined effects of Plaintiff's impairments when determining her RFC. (*Id.* at 16.) Finally, Plaintiff contends that the ALJ erred in determining her credibility. (*Id.* at 18.)

### A. Evidence before the Appeals Council

Plaintiff contends that the Appeals Council erred when it rejected the evidence presented after the ALJ's decision. (Plf.'s Mot. at 11.) Per 20 C.F.R. § 416.1470(a)(5), the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."

First, Plaintiff points to the records that showed Plaintiff had been experiencing back pain and that she had been administered an epidural steroid injection. (Plf.'s Mot. at 11; AR 295-99.) Plaintiff, however, provides no explanation for why this evidence would have affected the ALJ's decision. The ALJ acknowledged that Plaintiff had a long history of back pain, and Plaintiff testified that she had received epidural steroid injections in 2004 and 2009. (*See* AR 26, 549.) The ALJ did not suggest that Plaintiff did not have treatment for her back pain, or rely on lack of treatment of her back to make negative inferences. While Plaintiff argues that the ALJ did not find Plaintiff credible, Plaintiff fails to explain how this additional evidence would have changed the credibility finding. (Plf.'s Reply at 6.) Indeed, there is nothing in the record to suggest that the ALJ's credibility finding was based specifically on Plaintiff's back pain or treatment thereof. Thus, the Court finds that the Appeals Council did not err in rejecting this evidence, as Plaintiff "bears the burden of establishing the [evidence] undermine[s] the ALJ's decision." *Coombs v. Berryhill*, Case No. 16-5878-BAT, 2017 WL 2992427, at *3 (W.D. Wash. July 14, 2017) (finding

11

1  that the plaintiff "fails to meet that burden in that she provides no explanation as to how or why
2  the results requires reversal of the ALJ's decision").

3  Second, Plaintiff argues that evidence regarding her hands would affect the ALJ's RFC
4  that Plaintiff could use her hands frequently, and thus her ability to perform the hand packager
5  position. (Plf.'s Mot. at 11, 13.) Again, the Court disagrees. While the examination findings
6  showed some resistance in extension and weak grip, which would likely affect Plaintiff's ability to
7  perform activities of daily living, Dr. Fox found that treatment would likely last five to six weeks
8  with good rehabilitation potential. (AR 228-29.) Thus, there is no showing that the hand
9  problems could be expected to last for a continuous period of not less than twelve months. *See* 42
10 U.S.C. § 1382c(a)(3)(A) ("an individual shall be considered to be disabled . . . if he is unable to
11 engage in any substantial gainful activity by reason of any medically determinable physical or
12 mental impairment which can be expected to result in death or which has lasted or can be expected
13 to last for a continuous period of not less than twelve months").

14 Finally, Plaintiff contends that Dr. Large's supplemental report directly contradicts the
15 ALJ's finding that Dr. Large's treatment notes showed that Plaintiff was looking better. (Plf.'s
16 Mot. at 11.) The Court agrees. The ALJ relied on treatment notes from August to October 2016
17 indicating improvement to discount Dr. Large's opinion about Plaintiff's capacity to work,
18 focusing on Dr. Large's observations that Plaintiff looked more relaxed and less depressed. (AR
19 29, 1567.) The ALJ also noted that treatment of "modest duration" had improved Plaintiff's
20 condition. (AR 29.) Dr. Large's supplemental report, however, directly contradicts the ALJ's
21 interpretation of her treatment notes, clarifying that Plaintiff's depression was still severe and
22 poorly controlled, and that Plaintiff was unable to tolerate the dose of antidepressants she was on
23 due to adverse side effects. (AR 9.) Thus, there is a reasonable probability that this information
24 would have changed the outcome of the decision.

25 Notably, Defendant does not argue that Dr. Large's supplemental report is not material.
26 Instead, Defendant argues that the February 7, 2017 questionnaire "is not relevant because it falls
27 outside of the alleged disability period," as it was issued after the ALJ's decision date. (Def.'s
28 Opp'n at 2.) This, however, is not the standard; the standard is whether the report "*relates* to the

period on or before the date of the hearing decision." 20 C.F.R. § 416.1470(a)(5) (emphasis added). Dr. Large's supplemental report may have been made after the ALJ's November 2, 2016 decision, but it directly addresses her August through October 2016 treatment notes. (AR 9.) Thus, it relates to the relevant period.

Accordingly, remand is warranted to allow the ALJ to consider the effect of Dr. Large's supplemental report.

### B. Step Five

Second, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform the jobs of addresser, document preparer, and hand packager, such that Plaintiff was not disabled.

#### i. Addresser

Plaintiff contends that the job of addresser is obsolete. (Plf.'s Mot. at 12.) While the VE testified that there were 8,000 of these positions nationally, the SSA in May 2011 has found that the job was obsolete and did not exist in sufficient numbers in the national economy. (*Id.*; *see also* MARK TREPANI & DEBORAH HARKIN, SOC. SEC. ADMIN., OCCUPATIONAL AND MEDICAL-VOCATIONAL CLAIMS REVIEW STUDY at 7 (May 2011) (identifying jobs that "[i]t is doubtful . . . currently exist in significant numbers in our economy").) Defendant responds that the Ninth Circuit found in *Gallo v. Comm'r of Soc. Sec. Admin.*, an unpublished decision, that the ALJ was "entitled to rely on the VE's testimony that the Addresser job exists in significant numbers in the national economy." 449 Fed. Appx. 648, 650 (9th Cir. 2011).

*Gallo* is not binding on the Court, and the Court finds the district court's reasoning in *Skinner v. Berryhill* more persuasive. No. CV 17-3795-PLA, 2018WL 1631275 (C.D. Cal. Apr. 2, 2018). There, the court explained that "it is not unreasonable to assume that the occupation of 'addresser,' which--as described by the DOT [(Dictionary of Occupational titles)]--provides for addressing envelopes *by hand or by typewriter*, is an occupation that has significantly dwindled in number since 1991 in light of technological advances." *Id.* at *6. Thus, "a reasonable mind would not accept the VE's testimony that there are over 3,000 such positions in the region of California alone, or even that there are over 10,000 in the national economy." *Id.* The *Skinner* court also pointed to the SSA's May 2011 study as "cast[ing] additional doubt on the reliability and

13

credibility of the VE's testimony and on the ALJ's conclusion that 'addresser' jobs exist in significant numbers." *Id.* Further, *Skinner* specifically addressed *Gallo*, noting that there, the plaintiff had not provided any evidence in support of the argument that the addresser job did not exist in significant numbers. *Id.* at *7. In contrast, the *Skinner* plaintiff had provided the court with such evidence, including the May 2011 study. *Id.*

As in *Skinner*, the Court finds that per the SSA's own findings, the addresser job is obsolete. Therefore, the ALJ erred in finding that the addresser job existed in significant numbers in the national economy.

### ii. Document Preparer

Plaintiff next argues that the ALJ erred in finding that Plaintiff could work as a document preparer because that position requires Level 3 Reasoning. (Plf.'s Mot. at 13.) Level 3 Reasoning requires that an individual "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations." (DOT, App'x C.) In contrast, the ALJ's RFC found Plaintiff was limited to simple, repetitive tasks. (AR 25.)

In *Zavalin v. Colvin*, the Ninth Circuit held that "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." 778 F.3d 842, 847 (9th Cir. 2015). Thus, an ALJ's failure to recognize that inconsistency was error, particularly where the ALJ failed to ask the VE to explain why a person who could only perform simple, repetitive tasks "could nevertheless meet the demands of Level 3 Reasoning." *Id.*

Defendant responds that *Zavalin* is distinguishable because there, the plaintiff was 18 years old and had cerebral palsy, a learning disorder, and a speech impairment. (Def.'s Opp'n at 4.) In contrast, Defendant argues Plaintiff has previously performed Level 3 Reasoning when she worked as a home attendant, and that she does not have a learning disorder or learning-related mental impairment. (*Id.*) Further, Defendant contends Plaintiff has demonstrated linear thinking and adequate memory, attention, concentration, and normal speech. (*Id.*) Thus, Defendant contends any error is harmless.

The Court disagrees. The fact that Plaintiff previously performed Level 3 Reasoning does

14

not mean she is capable of such functionality *now*; otherwise, the ALJ would not have limited Plaintiff to simple, repetitive tasks. Further, the fact that Plaintiff can perform linear thinking and has adequate memory, attention, concentration, and normal speech does not mean she can, for example, "[d]eal with problems involving several concrete variables." Moreover, "[b]ecause the ALJ did not recognize the apparent conflict between" Plaintiff's RFC and the demands of Level 3 reasoning, "the VE did not address whether the conflict could be resolved. As a result, [the Court] cannot determinate whether substantial evidence supports the ALJ's step-five finding." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1004 (9th Cir. 2015). Thus, the ALJ erred in finding that Plaintiff could perform this position.

### iii. Hand Packager

The Court, however, finds that the ALJ did not err in finding that Plaintiff could perform the hand packager position. Plaintiff argues that the records submitted to the Appeals Council regarding her hands should have changed this conclusion; as discussed above, however, the records submitted did not evidence an impairment lasting for a continuous period of twelve months. (*See* Plf.'s Mot. at 13.) Thus, the Court finds no error as to the hand packager position.

### C. Medical Opinions

Next, Plaintiff contends that the ALJ erred in evaluating Dr. Large's and Dr. Salvador-Moses's opinions. In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Id.* A treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor, and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830.

With respect to Dr. Large, the Court finds that remand is appropriate to consider Dr.

Large's opinion in light of her February 2017 supplemental report. As discussed above, Dr. Large's February 2017 supplemental report clarified her treatment notes, and therefore had a reasonable probability of changing the ALJ's opinion as to how much weight should be given to her opinion.

As to Dr. Salvador-Moses, the Court also finds error. The ALJ assigned partial weight to Dr. Salvador-Moses's opinion, on the grounds that her evaluation and the overall medical evidence of record did not support a more restrictive functional limitation. (AR 30.) "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . ." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1998). Instead, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Id.* at 421-22. Here, the ALJ did not explain what those evaluation results or medical evidence of record were, or why they did not support Dr. Salvador-Moses's opinion. Rather, the ALJ only summarized Dr. Salvador-Moses's various opinions before rejecting them. This is reversible error.

To the extent Defendant argues that Plaintiff's treatment history and her activities of daily living support the ALJ's decision to give partial or no weight to Dr. Large's and Dr. Salvador-Moses's opinions, such arguments are unpersuasive. The ALJ did not cite to either of these reasons in justifying giving lesser weight to these opinions. Defendant cannot use *post hoc* rationales to justify the ALJ's conclusion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

### D. Fibromyalgia and Combination of Impairments

Fourth, Plaintiff argues that the ALJ erred by looking for "objective evidence" of strength as to Plaintiff's fibromyalgia, and by failing to consider the combination of Plaintiff's impairments. (Plf.'s Mot. at 16-17.) The Court disagrees.

With respect to Plaintiff's fibromyalgia, the ALJ did not look for "objective evidence" of

strength. Rather, as Defendant correctly points out, the ALJ specifically acknowledged that "with fibromyalgia[,] there are many times that the allegations appear to be unsupported by objective medical evidence alone." (Def.'s Opp'n at 7; AR 28.) Thus, the ALJ was required to look at Plaintiff's statements, reports, and testimony, which the ALJ then proceeded to do. The ALJ explicitly did not rely on the lack of "objective evidence" of strength, and therefore did not err.

As to the combination of Plaintiff's impairments, Plaintiff argues that the ALJ should have considered whether Plaintiff could perform a sedentary job if she was feeling pain or fatigue or depression, or if she was experiencing nausea from her medications, or if her high blood pressure was having some unknown effect. (Plf.'s Mot. at 18.) The ALJ, however, considered Plaintiff's pain and mental symptoms when forming his RFC. (AR 24, 26.) As for nausea or high blood pressure, Plaintiff points to no evidence that those would have impacted her ability to work; the mere existence of certain symptoms or conditions does not necessarily affect her job performance. Thus, the Court finds no error.

### E. Plaintiff's Credibility Determination

Finally, Plaintiff argues that the ALJ erred in evaluating Plaintiff's allegations of the severity of her symptoms. (Plf.'s Mot. at 18.) In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In weighing a claimant's credibility, an ALJ may consider "the claimant's daily activities." *Id.* (internal quotation omitted). "Daily activities can form the basis of an adverse credibility finding where the claimant's activities (1) contradict her other testimony or (2) meet the threshold for transferable work skills." *Sabin v. Astrue*, 337 Fed. Appx. 617, 620 (9th Cir. 2009) (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The Court finds that the ALJ erred. In finding Plaintiff was not entirely credible, the ALJ relied on: (1) Plaintiff maintaining a driver's license and maintaining a household; (2) her alleged avoidance of direct answers that would show her functional limitations, such as who cooked meals and how she monitored her son's progress; and (3) Plaintiff's sons receiving disability from an unknown source, yet performing household upkeep. (AR 27-28.)

With respect to Plaintiff maintaining a driver's license, there is no explanation for how this is relevant to Plaintiff's credibility, particularly when Plaintiff does not have a car. (AR 554.) Likewise, it is unclear to what extent Plaintiff maintains a household, as the ALJ then acknowledged that Plaintiff's sons perform most household upkeep. (AR 27.) Thus, it is not clear how this affects her credibility.

To the extent the ALJ relied on Plaintiff's "avoidance" of direct answers, a review of the record does not show such avoidance. With respect to the ALJ's questions on who was responsible for making meals for her and her son, Plaintiff responded "Both of us, we both help each other." (AR 554.) This is a direct answer to the ALJ's question, and not contradictory to her prior report that she prepared simple meals on a daily basis. (AR 800.) With respect to her monitoring her son's progress at school, the ALJ explained that he asked whether Plaintiff checked with the school via e-mail or attended parent-teacher meetings, but that "[a]fter several questions, she stated that she 'sometimes' monitors her son's progress but did not provide anything more specific." (AR 28.) In fact, Plaintiff responded that she did not really correspond with her son's teachers by e-mail because she did not know much about computers, and that she went in person to see his teachers because a counselor drives her to the school. (AR 556.) It is not clear why these answers were evasive, as they directly responded to the ALJ's questions. *Compare with Shultes v. Colvin*, No. C13-1448-RSL-JPD, 2014 U.S. Dist. LEXIS 133838, at *26-27 (W.D. Wash. Aug. 29, 2014) (reviewing record and finding that the plaintiff's statements about his alcohol and drug use were not forthcoming or inconsistent); *Waldon v. Colvin*, Case No. 15cv0631 AJB (NLS), 2016 U.S. Dist. LEXIS 115799, at *23-24 (S.D. Cal. Aug. 29, 2016) (same).

Finally, as to her sons receiving disability from unknown sources while still performing household chores, the ALJ provided no explanation for how this affects Plaintiff's credibility. Without more, it is unclear why this made Plaintiff less believable.

Defendant, in turn, argues that the ALJ found that the medical evidence contradicted Plaintiff's claims, that her mental health treatment history undermined her allegations of disabling mental limitations, and that her activities of daily living undermined her claims. (Def.'s Opp'n at

18

8-9.) Again, however, the ALJ did not cite these specific reasons in weighing Plaintiff's credibility. The Court cannot rely on *post hoc* rationalizations. *See Bray*, 554 F.3d at 1225. Thus, the Court finds that the ALJ failed to offer clear and convincing reasons in finding Plaintiff not credible.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. The Court remands this case for further proceedings consistent with this order.[1]

IT IS SO ORDERED.

Dated: September 30, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[1] Plaintiff argues that remand for benefits is appropriate, relying solely on the ALJ's alleged error at Step Five. (Plf.'s Mot. at 20.) While the Court agrees that the ALJ erred as to the addresser and document preparer jobs, the Court does not find error as to the hand packager job. Therefore, remand for benefits if not appropriate.